CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

AUG 1 8 2020

JULIA C. DUDLEY, CLERK
BY /s/
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JERMEL ANTHONY COLEMAN,<br><br>                       *Defendant.* | CASE NO. 3:17-cr-8<br><br>**ORDER**<br><br>JUDGE NORMAN K. MOON |

Before the Court is Defendant Jermel Anthony Coleman's motion for compassionate release. Dkt. 149. At 44 years of age, with chronic uveitis and consequences of viral pneumonia – Defendant seeks compassionate release based on the risks posed to him from the COVID-19 virus pursuant to 18 U.S.C. § 3582(c)(1). Defendant satisfied the necessary exhaustion requirements, and the Government agrees. Dkt. 151. However, Defendant's circumstances do not constitute an "extraordinary and compelling reason" for early release under § 3582(c)(1). Therefore, the Court must deny his motion.

### Background

On August 19, 2019 the Court sentenced Defendant to 102 months' incarceration for conspiracy to distribute cocaine and cocaine base and possession with intent to distribute cocaine. Dkt. 149-3. Defendant is currently incarcerated at FCI Ray Brook. Defendant served three years and 12 days as of April 30, 2020, or approximately 36 percent of his sentence. *Id.* According to the BOP website, his projected release date is July 17, 2024. Defendant suffers from several health issues. Evidence put forth by the Defendant includes the following

1

conditions: chronic uveitis, ongoing symptoms from a previously diagnosed case of Pneumonia in late April, and hypertension. Dkt. 149 at 2, 4. Uveitis involves a sudden onset or inflammation in the middle layer of tissue in the eye. *Id* at 2. Without proper treatment, it could lead to permanent eye damage. *Id.* Since approximately March 3, 2020, Defendant has wrestled with a "serious recurrence" of uveitis. *Id.* Defendant's attempts to receive Ophthalmologist care have proved futile since the COVID-19 pandemic, as providers across the medical spectrum continue to grapple with the virus. *Id.* Defendant notes that patients typically use immunosuppressive medication to control inflammation, indirectly putting him at a higher risk of contracting COVID-19. *Id.* at 10. Because of the advanced stage of his uveitis, Defendant's next course of treatment will likely include corticosteroids that will systemically suppress his immune system. *Id.* He is not, however, currently taking that medication with immunosuppressant effect.

In conjunction with his uveitis, Defendant reports continued symptoms emanating from his viral pneumonia, diagnosed in April. *Id.* at 12. He claims that his ongoing symptoms may be an indication of future respiratory issues, including heightened risks from COVID-19. *Id.* Defendant further alleges that his history of hypertension situates him as a person susceptible to COVID-19 fatality. *Id.* at 13.

More generally, Defendant claims treatment for his uveitis has been inadequate at FCI Ray Brook. Since the inflammation began in March, Defendant's eye condition has worsened significantly. He has lost most of the vision in his left eye, and the medication currently provided to him is inadequate to solve the issue. *Id.* at 11. Defendant contends that when using corticosteroids, which increase the risk of ocular hypertension, Defendant's intraocular pressure must be monitored to avoid glaucoma. *Id.* No monitoring of Defendant's eye pressure has occurred at FCI Ray Brook. *Id.* He states that without further medical support, these issues will

worsen, as exemplified by his continuing loss of vision in his left eye due to the uveitis. Dkt. 154 at 2.

Although the Government agrees that Defendant satisfied the necessary exhaustion requirements, they oppose his motion for compassionate release. Dkt. 151. In doing so, the Government contends that Defendant's conditions do not make him a high-risk candidate for severe illness due to COVID-19 as outlined by the Centers for Disease Control (CDC) guidance. *Id.* at 9. Further, the Government relies on the fact that Defendant is not identified on FCI Ray Brook's home confinement eligibility list to support its conclusion. *Id.* at 5–8. Coupled together, the Government says, these reasons demonstrate that no extraordinary and compelling reason exists for early release from custody. *Id.* at 8-9. Insofar as it related to the § 3553(a) factors, the Government opposes Defendant's early release because the sentencing factors counsel against it. *Id.* at 9–10.

**Analysis**

Before Congress passed the First Step Act, only the Bureau of Prisons ("BOP") could move the Court for compassionate release of an incarcerated defendant for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i). Pursuant to the First Step Act, a defendant now can file a motion for compassionate release on their own behalf, if "the defendant first ask[ed] the BOP to do so and exhaust[ed] administrative appeals following denial of this request." *United States v. Mattingley*, No. 6:15-cr-00005, 2020 WL 974874, at *2 (W.D. Va. Feb. 28, 2020). A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted. *See, e.g., id.* at *3.

1. Exhaustion of Administrative Remedies

Both parties agree that the Defendant exhausted his administrative remedies as required under § 3582(c)(1)(A). Previously, Defendant moved *pro se* for compassionate release, but the motion was denied without prejudice because of failure to exhaust administrative remedies. Dkt. 147. Following the dismissal, Defendant applied to the warden of FCI Ray Brook for compassionate release on April 15, 2020. Dkt. 149-2. More than 30 days have elapsed since his request. Dkt. 151 at 3. Accordingly, the Court agrees with the parties that Defendant adequately exhausted his administrative remedies, as mandated under § 3582(c)(1)(A).

2. Extraordinary and Compelling Reasons

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). An exception to this rule exists whereby a court "may reduce the term of imprisonment" if the court "finds that extraordinary and compelling reasons warrant such a reduction." *Id.* Relevant here is U.S.S.G. § 1B1.13, Comment 1(A), which states in part that "extraordinary and compelling reasons exist" where a "serious physical or medical condition of the Defendant... [] substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." If the Court finds extraordinary and compelling circumstances, it must then look to "the factors set forth in section 3553(a) to the extent that they are applicable." *Id.* The court must ensure that "a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A).

Although Defendant's uveitis is no doubt a difficult and painful condition, he has not demonstrated that in this case, it rises to the level of an "extraordinary and compelling" reason warranting modification of his sentence. Uveitis is a condition that inflames the eye, irritating the middle layer of tissue known as the uvea. Dkt. 149 at 2. It can have sudden onset and quickly

deteriorate the health of the eye if left untreated. *Id.* At best, uveitis leads to redness and pain in the eye; at worst it leads to harsher outcomes like blurred vision or permanent vision loss. *Id.* The threshold required by U.S.S.G. § 1B1.13 requires that Defendant be suffering from "a serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." In addition, courts have found "extraordinary and compelling" circumstances when an inmate shows "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19-cr-112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020).

Ultimately, the Defendant fails to meet his burden under § 3582(c)(1)(A), nor has he satisfied U.S.S.G. § 1B1.13. Defendant's vision is limited and has deteriorated since the onset of the COVID-19 pandemic, but he does not demonstrate that it has worsened to the point where he can no longer provide self-care. This is true even if Defendant's risk of glaucoma may increase, due to the potential of mismanagement of ocular hypertension. Alone, such a risk is not enough to warrant an exception based on extraordinary and compelling circumstances.

Defendant asks the Court to analogize his case to that of Devon Parramore. *United States v. Parramore*, No. CR18-156-RSM, 2020 WL 3051300, at *1 (W.D. Wash. June 8, 2020). In *Parramore*, the defendant sough compassionate release from his 33-month prison term and three years of supervised release for methamphetamine distribution to an undercover agent. *Id.* Defendant had severe stage glaucoma in both eyes and, in February 2020, was told to get care "ASAP" because he was going blind *Id* at 4. Indeed, Mr. Parramore is now blind in one eye and his condition so severe he "cannot ascend stairs" and must use the lower bunk "due to severe vision loss." *Id* at 5. The Court found no dispute as to the severity of the condition and apparent fact that

without surgery his condition would worsen. *Id.* Coupled with his quickly deteriorating sight, Defendant's prison suffered one of the worst COVID-19 outbreaks in the country. *Id.* Relying on this information, the Court concluded that there were "extraordinary and compelling" circumstances warranting release. *Id.*

In comparison, although Defendant has missed appointments for eye care and runs some risk of harm due to ocular hypertension and his chronic uveitis, his medical records reflects that he is in overall good health and not at risk from any life-threatening conditions. Dkt. 153. There is no evidence that Defendant's condition is so severe he cannot provide himself with "self-care." Defendant's uveitis is far from ideal, but it is not an extraordinary circumstance.

Taking into account the ongoing COVID-19 pandemic does not change the Court's analysis. Uveitis is not on the Centers for Disease Control ("CDC") COVID-19 guidance outlining underlying medical conditions which put individuals at a higher risk of severe illness.[1] While not necessarily dispositive, the CDC guidelines should be considered. *Wilson v. United States*, No. 2:11-cr-180, 2020 WL 3315995, at *3 (E.D. Va. June 18, 2020) ("[w]hen assessing compassionate release motions during the pandemic, the Court examines the Center for Disease Control and Prevention's [CDC] list of risk factors for severe COVID-19 complications.").

Further, Defendant fails to provide enough evidence to support his claim that he is more susceptible to acute harm above and beyond others who may get the virus. Defendant argues that because systemic corticosteroids are immunosuppressive, he will therefore be more vulnerable to COVID-19 if he takes systemic injections/pills. Dkt. 149 at 10. His brief cites a *Nature* article by

---

[1] *See* CDC, People with Certain Medical Conditions, Coronavirus Disease 2019 (COVID-19), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited August 13, 2020) (defining the conditions that increase risk of severe illness from COVID-19 and the conditions that *may* increase risk).

6

Jennifer Hung about uveitis and COVID-19. *Id.* The author states that uveitis patients are "potentially at higher risk ... as they may require systemic immunosuppression [treatment]."[2] She continues by discussing how patients on systemic corticosteroids should be monitored, but their use should only be discontinued in cases where a patient tests positive for COVID-19. *Id.* Both the CDC guidance and the *Nature* article define use of immunosuppressive medication as something that *may* increase COVID-19 severity. This, along with hypertension, is a step below the higher threshold of conditions, defined by the CDC, that *will* increase the severity of illness from COVID-19. Referring again to the CDC guidance and the cited *Nature* article, immunosuppressive medication does not definitively increase severity from COVID-19, therefore Defendant does not meet his burden. Indeed, Defendant's evidence fails to show that he is currently taking a drug with a severe immunosuppressive effect, or that he will be taking such a drug.

Even if the Court assumes the Defendant is at a higher risk of health problems due to COVID-19, he still fails to show that he is at an increased risk of contracting the virus at FCI Ray Brook. *See United States v. Wilson*, No. 2:18-cr-00295, 2020 WL 4287592 (S.D.W. Va. July 27, 2020) (declining to find extraordinary and compelling circumstances without a showing that the facility where the inmate is housed has conditions putting inmates at a high risk of contracting COVID-19). As of August 14, 2020, there are only two confirmed active COVID-19 cases at the facility.[3] The BOP's COVID-19 Response Plan, while far from perfect, has to date shown itself to curtail further spread of the virus and protect both inmates and staff. Dkt. 151 at 3-5. Indeed, even though FCI Ray Brook has seen as many as four active cases, facility staff have isolated and tested prisoners who show symptoms, including Defendant. Dkt. 153. Indeed, active incidents of

---

[2] Jennifer Hung, Implications of COVID-19 for uveitis patients: perspectives from Hong Kong, Nature (Apr. 29, 2020), https://www.nature.com/articles/s41433-020-0905-1.
[3] *See* Federal Bureau of Prisons COVID-19, https://www.bop.gov/coronavirus/ (last visited Aug. 14, 2020).

7

COVID-19 at the prison have even decreased since June, providing further evidence that FCI Ray Brook's response plan and procedures are deterring further incidence of the virus. Dkt. 154 at 2. Combined, these facts show that, Defendant cannot obtain compassionate release due to COVID-19, as there is no particularized risk of contracting the disease at his prison facility. *United States v. Harper*, No. 7:18-cr-25, dkt #64 (W.D. Va. April 28, 2020); *see United States v. Detria Carter*, No. CR 5:17-00113-002, 2020 WL 4679417, at *3 (S.D.W. Va. Aug 12, 2020) (finding that a prison with zero confirmed cases is a bar to compassionate release and that defendant must first contract COVID-19 to trigger the increased risk of serious harm as an "extraordinary and compelling reason"); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release").

In support of his motion, Defendant also cites hypertension and symptoms of his pneumonia from earlier this year as circumstances which increase the severity of potential COVID-19 outcomes. Similar to his uveitis, defendant fails to show that these conditions make him particularly susceptible to contracting the virus.

Accordingly, the Court finds that Defendant failed to meet his burden to show that extraordinary and compelling reasons justify his release.

3. Section 3553(a) factors

Even if extraordinary and compelling reasons support a sentence reduction, the Court must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). The Government argues that the § 3553(a) factors weigh against Defendant's release. The Court agrees.

Taking into account the § 3553(a) factors, the Court finds that release is inappropriate. Defendant is incarcerated for conspiring to distribute cocaine and cocaine base and possession with intent to distribute cocaine. Dkt. 151 at 1. As of April 30, 2020, Defendant had only completed approximately 36% of his sentence. He was a significant drug trafficker in the Western District of Virginia. Not only did he distribute narcotics, but he was also responsible for bringing narcotics to Charlottesville, Virginia from New York. *Id.* at 10. In addition, Defendant has a significant criminal history, including prior convictions for forging public records, carrying a concealed weapon, possession of marijuana, possession of a firearm after being convicted of a felony, as well as a host of driving violations. Dkt. 132. His prior actions and characteristics, though non-violent in nature, demonstrate a disregard for the law and weigh against his release.

Defendant also argues that permitting compassionate release in this case does not create an unwarranted sentence disparity. Dkt. 154 at 11. However, given the analysis above regarding Defendant's lack of particularized risk, the Court disagrees.

## Conclusion

Because Defendant failed to show that extraordinary and compelling circumstances warrant a reduction in his sentence, and because the § 3553(a) factors do not otherwise support a reduction in sentence, Defendant's motion for compassionate release under 18 U.S.C. § 3582(c) must be **DENIED**.

It is so **ORDERED**.

The Clerk of the Court is directed to send a copy of this Order to Defendant and all counsel of record.

Entered this 18th day of August, 2020.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE