UNITED STATES OF AMERICA

    v.

JERMEL ANTHONY COLEMAN

CASE No: 3:17 CR 8

HON. NORMAN K. MOON

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

MAR 2 3 2021

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

Motion To Amend

Motion For Compassionate Release

<u>In Light Of COVID-19 Pandemic</u>

Mr. Coleman, Pro-Se, now files this motion for compassionate release based on the risk posed to him from the ever spreading COVID-19 virus. This Court previously denied Mr. Coleman (Petitioner) his motion for compassionate release on August 18, 2020. Since that time, circumstances have changed. And for the following reasons, the Court should reconsider its previous denial and grant Petitioner's compassionate release. Specifically, Petitioner's conditions - chronic uveitis, cataract, viral pneumonia, hypertension, and also "H-Pylori," which is bacteria in one's gastric intestines. These together place Petitioner at a greater risk for serious complications resulting from the COVID-19 virus. Petitioner is also at increased risk of contracting COVID-19 given the most recent outbreak at F.C.I. Ray Brook where he is incarcerated.

<u>Introduction</u>

By now, this Court is unfortunately familiar with the impact of the coronavirus. There are millions of cases in the United States,

1

and hundreds of thousands have died. The month of December has seen an unprecedented amount of new cases along with new, more contagious variants, the "UK" strain, and also the "South African" strain. On January 7th, 2021 there were 4,000 deaths from COVID-19.

Petitioner suffers from several health conditions, both chronic and recent. He experiences chronic bouts of uveitis in his left eye, an inflamation of the middle layer of tissue in the eye. Without "proper" treatment, it can lead to serious and permanent damage to the eye, including retinal detachment, optic nerve damage, and blindness. Petitioner also now has a cataract in the same eye which impaires his vision drastically.

As of now Petitioner has suffered the longest bout of inflammation starting on March 3, 2020 and continuing now. Since the very start Petitioner has been on "Corticosteroid" medication, Durezol. C.D.C. names "Corticosteroids" and other immune weakening medications, as high risk medications for severe illness from COVID-19.

Unfortunately, F.C.I. Ray Brook is a Level One medical facility, the lowest level of care in the B.O.P. system, designed for inmates who are generally healthy and "have limited medical needs that can be easily managed by clinical evaluations every 6-12 months." As such, it does not appear equipped to handle a major COVID-19 outbreak, nor Petitioner's medical needs under the limitations imposed by the pandemic. Thus is the reason Petitioner has had "No" followup treatment nor consultation with opthmologist as recommended by opthamologist on June 18, 2020. (See attachment) (Exhibit A)

Petitioner was diagnosed with viral pneumonia in April 2020. That occurs when the lungs fill up with fluid (mucus), which can

severely damage lung tissue, which requires an extensive period of rehabilitation, and in some cases, can cause a permanent loss of respiratory capacity. With Petitioner's now compromised immune system, he continues to experience symptoms from his bout with pneumonia.

By this emergency motion, Petitioner seeks immediate release from F.C.I. Ray Brook to serve the remainder of his custodial term on home detention, or a sentence reduction to 60 months, the mandatory minimum sentence for his conviction. He seeks this relief pursuant to 18 U.S.C. 3582, as modified by the First Step Act, and do so in order to protect his Eighth Amendment and due process rights. As discussed more fully below, Petitioner is at risk of suffering serious consequences from the COVID-19 pandemic, both from the virus itself, and from the collateral effects of the virus, which are limiting his ability to receive appropriate treatment for his chronic and debilitating uveitis.

Petitioner is currently incarcerated at F.C.I. Ray Brook. Ray Brook is a medium security prison, and also more recent, a "holdover" prison in northern New York, housing 700+ inmates. F.C.I. Ray Brook has experienced several COVID-19 outbreaks and in most cases have been "under" reported. With the most recent outbreaks from November 2020 through January 2021 with hundreds of positive cases both inmates as well as staff. (See Exhibit B). While most of the country are taking steps to vaccinate, the situation at F.C.I. Ray Brook remains dangerous.

Petitioner is in danger of contracting a pernicious, very aggressive life threatening infection – the coronavirus. Unlike

3

most people in this country, however, he has no way to practice social distancing and sheltered proactive measures that are mandated by governments and health officials throughout the nation and which promise some hope of surviving the consequences of infection.

## I. Administrative Exhaustion

Petitioner has followed the administrative exhaustion process with a letter to the Warden which she acknowledges, but after more than 30 days still has not responded. (See Exhibit C)

## II. Extraordinary and Compelling Reasons Warrant A Reduction of Petitioner's Sentence Under The First Step Act.

Under the First Step Act, Courts may grant the direct request of prisoners to reduce their sentences if "Extraordinary and Compelling Reasons" warrant such a reduction. The present case presents a perfect example of such "Extraordinary and Compelling Reasons" as Petitioner's underlying health conditions put him at particular susceptibility to COVID-19. The outbreaks at Ray Brook put him at a particularized risk of suffering severe consequences.

## A. Petitioner is Particularly Susceptible to COVID-19

Petitioner suffers from multiple conditions that put him at an especially grave risk of harm. Uveitis patients are at an increased risk from COVID-19 because they require immunosuppression to control the inflammation in their eyes using "Corticosteroids" and other drugs. "Corticosteroids" are immunosuppressive drugs that decrease inflammation by reducing the activity of the immune system. This may be helpful against his uveitis, but at the cost of suppressing his immune system and making him more vulnerable to COVID-19.

Petitioner is also at risk from covid-19 because of his recent bout with viral pneumonia, which can leave lungs so inflammed that they cannot function, placing the body at risk of organ failure and death. Peitioner's compromised lung function leaves him vulnerable to more severe consequences from COVID-19 should he contract it.

Finally, Petitioner is a 44 year old African American male with a history of hypertension. Petitioner's hypertension alone has qualified as extraordinary and compelling circumstances suffi-cient to justify compassionate release.

See, UNITED STATES v. BENNING, No. 16-CR-0527-PNG, 2020 U.S. Dist. LEXIS 225177, 2020 WL 7054823. Researchers conclude "that COVID-19 patients with history of hypertension . . . have the worst prognosis and most often end up with deteriorating outcomes such as ARDS and pneumonia. Moreover, the most recent data from CDC shows 57.9% of hospitalized patients had hypertension. This cate-gory "All" individuals with a medical diagnosis of hypertension, not just those whose condition is not well controlled. (See COVID Laboratory - Confirmed Hospitalizations - Preliminary Data, CDC COVID-Net, available at https://gis.cdc.gov/grasp/covidnet/covid19_.html).

Petitioner thus has a constellation of serious health conditions that place him at risk. Under normal, pre-COVID-19 circumstances, all might be manageable in a prison setting with careful monitoring and prompt attention. Under the present circumstances, however, Petitioner faces a serious risk of permanent disability, grave illness, and death because of the impact of a COVID-19 infection on someone with his pre-existing conditions, as well as the limitations the COVID-19 pandemic has placed on the medical care at F.C.I. Ray Brook.

## III. A Sentence of Time Served or a Reduced Sentence of 60 Months is Sufficient to Accomplish the Goals of Sentencing

When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in 3553 (a) to determine whether a sentence reduction is warranted. 18 U.S.C. §3582 (c)(1)(A)(i). Under all of the circumstances in this case, the Court should conclude that the time that Petitioner has already served is sufficient to satisfy the purpose of sentencing. Here, the overriding factor under §3553 (a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents. Although the circumstances of the present offense qualified Petitioner for the sentence imposed, the presence of a once-in-a-lifetime pandemic in and around his facility cuts in his favor.

The pandemic, aside from posing a threat to Petitioner's health, has made Petitioner's incarceration harsher and more punitive than would otherwise have been the case. This is because the Federal Prisons,

6

as "Prime Candidates" for the spread of the virus, See UNITED STATES v. ALKASSAR, __7. Supp. 3d___, 2020 U.S. Dist. LEXIS 150558, 2020 WL 4813199, at *1 (S.D.N.Y. Aug. 19, 2020), have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal. For someone with Petitioner's health profile, the risk of suffering severe health consequences if he contracts COVID-19, coupled to the severe conditions imposed by the concomitant lockdowns and restrictions that are necessary to ensure Petitioner's safety, means that "the actual severity of [Petitioner's] sentence as a result of the COVID-19 outbreak exceeds what the court anticipated at the time of sentencing." UNITED STATES v. MEL, No. TDC-18-0571, 2020 U.S. Dist. LEXIS 74491, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020).

Petitioner is not a danger to his community, and there is no public safety factor. (See Exhibit D). Petitioner was convicted of a non-violent offense. Despite allegations, Petitioner pled to, and was convicted for a "lesser included offense" of the first super-ceding indictment which exclude the vast amount of crack cocaine alleged in statements. Petitioner was subsequently convicted for conspiracy to distribute between 500 grams to 2 kilograms of cocaine. With another count of Possession With Intent To Distribute Cocaine. The severity rating for these convictions are "moderate" (See also Exhibit D), and the mandatory minimum is 60 months. Petitioner, due to an 11(c)(1)(c) plea agreement with a range from 84 to 120 months, coupled with a disputed relevant conduct, was eventually sentenced to 102 months. Courts have recognized that the charge of conviction is what counts, and what should be considered. (See UNITED STATES

While Petitioner has a substantial criminal history, all for non-violent offenses that he was convicted for between 1999 and 2003. Petitioner was as young as 23 and as old as 27 at those times. Also notable is that most of the more serious offenses specifically "forging public documents, carrying a concealed weapon, possession of a firearm by a convicted felon, and possession of marijuana," all arise out of the same series of events on March 28, 2001. Furthermore, both weapons charges are for the same "one" weapon. So at closer inspection, Petitioner's criminal history looks more disturbing than it really is. The brunt of Petitioner's criminal history are for driving infractions and traffic related misdemeanors. Petitioner was 43 years old at the time he was sentenced for the instant offense. As researchers at the Institute of Justice have found, criminal behavior changes dramatically as a person ages. The data shows a steep decline at about age 35.

Under "Pepper v. United States" (2011) the Court can, and indeed "must" consider the most up-to-date picture of the defendant's history and characteristics, which shed light on likelihood that the defendant will engage in future criminal conduct.

At the time of Petitioner's sentence the Court was presented with a sentencing memorandum that contained numerous character letters from clergy, professionals, entertainers, as well as family members and close friends. Not only does it show a loving father and devoted friend, but also a man who gives back to his community through char-itable works. One should be judged not only by his worst day, but also by his best days. While incarcerated Petitioner has continued

to further his education and has completed numerous programs to better himself. Specifically in self study classes in History, Writing Classes, Fitness, and Drug Counseling. Petitioner has "NO" disciplinary history and is rated "medium" risk for recidivism. Petitioner qualifies for "All" First Step Act incentives. (See Exhibit E).

Petitioner is also awaiting placement into the "Court ordered" Residential Drug Program (RDAP), where he qualifies for an additional 12 months off from his sentence. Petitioner has served more than 50% of his projected time. District Courts across the country have granted motions for compassionate release from inmates who have served only a small portion of their term of imprisonment for drug related crimes, SEE <u>UNITED STATES V. LOCKE</u>, No. CR 18-0132 RAJ, 2020 U.S. Dist. LEXIS 102592, 2020 WL 3101016 (Granting compassionate release to inmate convicted of drug and gun offenses who served only a few months of his 62 month sentence). Also see <u>UNITED STATES V. FOWLER</u>, 445 7. Supp. 3D 452, 453 (N.D. Cal. 2020), <u>UNITED STATES V. DELGADO</u>, 457 7. Supp. 3d 85, 87 (D. Conn 2020).

Petitioner has a reasonable release plan. Upon release, he plans to live with his fiance, Shavonne Jordan, in Brooklyn, New York. They have been together for 9 years, and she has a condo there in which he can self quarantine. Petitioner has been treated at Mt. Sinai Hospital for his uveitis in the past, and thus will have ready access to specialists who are familiar with his condition. Petitioner is willing to continue any Court ordered drug treatment programs available to him. Petitioner is a self published author, and is working on his up-coming memoir, "Unconquerable Soul," an employment

well suited to home confinement and self quarantine.

By some token, Mr. Coleman asks the Court to permit him to spend any 14 day quarantine period upon release in home detention, rather than in the Bureau of Prisons.

## Conclusion

For these reasons Petitioner asks the Court to grant him immediate release on conditions of home confinement, or reduce his sentence to 60 months. Extraordinary and compelling reasons warrant immediate release or a reduction of Petitioner's sentence, as both his underlying health conditions and rapidly spreading outbreaks at F.C.I. Ray Brook put him at grave risk from COVID-19. A sentence of time served, followed by a period of home confinement, or a sentence of 60 months is sufficient but not greater than necessary to meet the goals of sentencing.

Respectfully submitted,

Jermel Anthony Coleman

Dated: March 17, 2021

# Bureau of Prisons
# Health Services
# Consultation Request

| Inmate Name: COLEMAN, JERMEL ANTHONY | Reg #: 08876-084 | Complex: RBK |
|---|---|---|
| Date of Birth: 04/25/1976 | Sex: M | |

**Consultation/Procedure Requested:** Ophthalmology
**Subtype:** Ophthalmology
**Priority:** Routine
**Target Date:** 03/31/2020
**Reason for Request:**
 Consult request for evaluation of patient with stated 16 year history of chronic uveitis.
**Medications (As of 03/10/2020)**

**Allergies (As of 03/10/2020)**
 No Known Allergies
**Health Problems (As of 03/10/2020)**
 HIV Test Refused, Sciatica, unspecified side, Iridocyclitis, Unspecified disorder of eye and adnexa
**Inmate Requires Translator:** No          **Language:**
**Additional Records Required:**
**Comments:** *K. Sorrell*
**Requested By:** Sorrell, K. ANP
**Ordered Date:** 03/10/2020 10:20
**Scheduled Target Date:** 03/31/2020 00:00
**Level of Care:**

Patient seen 6/18/2020. See attached report.

T. Root, HIT

**T. Root, HIT**

7-17-2024

*A*

| | |
|---|---|
| Inmate Name: COLEMAN, JERMEL ANTHONY | Reg #: 08876-084    Complex: RBK |
| Date of Birth:    04/25/1976 | Sex:    M |

Report of Consultation: Ophthalmology              Subtype: Ophthalmology

Inmate Name: COLEMAN, JERMEL ANTHONY
Date of Birth: 04/25/1976                                    Reg #:    08876-084
Institution:    RAY BROOK FCI                          Sex:       M
                128 RAY BROOK ROAD
                RAY BROOK,New York 12977
                5188974000

Assessment:

uveitis OS c̄ ↑ cataract 2nd to steroids
decreased vision OS

Plan:

↑ Durezol TID OS if improved in 1 month ↓ BID OS
phone consult available if needed

Signature
Date                              06/18/20

Completed By:

Report may be hand-written or (preferably) typed on this form. If dictated on office or hospital letterhead to follow, please indicate essential findings or recommendations to be acted upon pending final report.

Follow-up services and primary responsibility for inmate health care remains with Bureau of Prisons staff. While discussion of diagnostic/treatment options with the inmate may be appropriate, they are subject to review by the inmate's primary care provider, the institution utilitzation review committee and/or the BOP National Formulary.

Please notify institution prior to scheduling surgery dates or follow-up appointments.

Inmate not to be informed of appointment dates.

X. Sorrell
6-24-2020
K. Sorrell, ANP

# Bureau of Prisons
## Health Services
## Cosign/Review



| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | COLEMAN, JERMEL ANTHONY | | | Reg #: | 08876-084 |
| Date of Birth: | 04/25/1976 | Sex: | M | Race: | BLACK |
| Scanned Date: | 06/25/2020 08:31 EST | | | Facility: | RBK |

**Reviewed by Manenti, John D.O, RMD on 06/25/2020 09:53.**

EXHIBIT

B

# Adirondack Daily Enterprise

# Union: Prison apathetic about COVID

## CO leader says FCI Ray Brook underreported outbreak numbers, tests inmates infrequently and staff not at all



...e Federal Correctional Institute at Ray Brook is seen in April 2016. The buildings were originally built ...house athletes for the 1980 Winter Olympics in nearby Lake Placid. Converting it to a prison afterward



RAY BROOK — The largest spike in COVID-19 cases among inmates and staff at the Federal Corrections Institute at Ray Brook was never reported by the Federal Bureau of Prisons, according to a union president for corrections officers at the facility. He said the virus spiked after the BOP brought in around 100 new inmates from the U.S. Marshals Service without testing them first.

Currently, 86 inmates and 17 staff members at FCI Ray Brook are reported positive by the BOP. These numbers are accurate, according to James Weldon, president of AFGE CPL33, Local 3882, but they haven't been for the last month.

Weldon said the BOP never reported on the 130 inmates and 25 staff who tested positive during the peak of the outbreak two weeks ago.

The BOP has not returned multiple requests for comment in recent weeks.

Weldon said a lack of testing for both inmates and staff, as well as a general apathy toward the spread of the virus in the facility, led to the outbreak. The true extent of the spread is unknown because testing is still rare, he said. There are around 200 staff members at the facility.

Weldon also said there are not accurate numbers for positive cases among staff.



"The BOP refuses to test staff at FCI Ray Brook," he said. "It's been hectic. … Everybody's on edge because they're scared."

Staff members have to seek tests themselves if they are concerned about exposure.

Weldon himself contracted the virus a few weeks ago.

"To put it mildly, I was sick as a dog," he said. "But I recovered, so I am fine."

—

How many cases?

—

"The information on the BOP's website is erroneous," Weldon said. "For some reason they were not updating it."

The BOP's negligent case reporting practices led to inaccurate data being given to the press and the public in recent weeks, not revealing the full scope of the virus outbreak, he said. BOP numbers have also not agreed with county numbers.

On Jan. 7 the Essex County Health Department reported 79 new cases of COVID-19 at the federal prison. At the time, the BOP was reporting much lower numbers and did not reflect this jump in cases until a week later, missing the peak of the spike.



Weldon said the website only updated with correct current statistics after he repeatedly pointed out the inaccurate reporting.

According to Weldon, at the peak of the outbreak, 130 inmates and 25 staff were testing positive at one time. In all, he said around a quarter of the facility's 700 inmates have tested positive in the past few weeks.

*"Officially, we probably had around a quarter of the inmates' (tests) come back positive,"* Weldon said. *"But we didn't test all of our inmates, and we still have not tested all of our inmates."*

Many inmates have recovered, but he said inmates are generally not tested until they begin experiencing COVID-19 symptoms.

Currently, 374 inmates are in quarantine after contact with a positive individual, Weldon said. Some of them have been tested; some have not. He has requested these numbers but has not received them.

—

How did this happen?

—

Weldon said the virus outbreak started after the facility took in around 100 inmates from the U.S. Marshals Service.

*"They're supposed to be tested, by policy, but none of them were tested prior to transport here,"* Weldon said. *"Within two weeks of the bulk of them arriving, we started going through a spike in positive cases."*

In the spring, the BOP agreed to let the USMS use 11 of its facilities as holding centers for inmates until they are moved to their designated institution. FCI Ray Brook is one of these facilities.

The USMS is the enforcement arm of the federal courts and all federal agencies, tasked with capturing fugitives, serving federal arrest warrants and transporting prisoners. Inmates in USMS custody are not yet serving

B,

sentences. They are in USMS custody until they are acquitted or incarcerated.

In late November to early December, Weldon said the regional BOP office asked FCI Ray Brook administrators if the local prison could take in USMS inmates from around the northeast U.S. because the Marshals' facilities were overburdened.

Despite the union and staff members here saying they opposed this plan, fearing a coronavirus spike, the FCI Ray Brook warden and executive staff agreed, and Weldon said 80 to 100 inmates were transferred in without being tested before or after. Inmates are transported by bus and plane in tight, crowded vehicles and sometimes without masks.

In May, 31 members of Congress — including North Country Rep. Elise Stefanik, as well as New York Sens. Kirsten Gillibrand and Chuck Schumer — sent a letter to both agencies, expressing *"concern and disappointment"* that inmates would not be tested before transfer and asking them to change their testing policy.

Stefanik spokesperson Karoline Leavitt responded to the outbreak.

*"Congresswoman Stefanik again calls on the Bureau of Prisons to reconsider their protocol and stop unnecessarily putting corrections officers, staff, prisoners and the North Country community at risk,"* she wrote in an email.

## Inmate perspective

For inmates, being behind bars during a virus outbreak in prison is hard. A family member of one inmate in quarantine, who asked to remain anonymous out of fear of retribution against the loved one, said the conditions are *"inhumane."*



This inmate was one of the USMS transfers. He came to FCI Ray Brook from a COVID-free county jail on Nov. 20, 2020, and was housed with two other inmates. He was tested and waited 14 days for a result.

During this time, his family member said he was only allowed to leave the cell for 20 minutes a day to shower, check email and make a phone call. Lunch consisted of a sandwich and an egg, the family member said. The family member said these conditions are *"harsh"* and *"callous,"* adding that they believe inmates should be released to home confinement.

*"No inmate should be in 24-hour box confinement for 3 months or more,"* the family member wrote in an email. *"It is not healthy for the mind nor spirit."*

Since midnight on Saturday all BOP facilities have been on lockdown, with inmates only getting limited access to showers, email and phones. BOP officials said this was done as a precautionary measure over concerns of violence in prisons during the inauguration of Joe Biden on Wednesday. Some specific BOP staff members have been deployed to Washington, D.C., in preparation for the event.

The lockdown was announced after inmates were locked in their cells Friday, in fear of possible backlash against the sudden lockdown.

## Apathy

Weldon said in his role as a union president, he has butted heads with people higher up on the chain of command but has only heard apathy in response.

*"From the executive staff members on up, they were of the opinion that 'It is what it is, and we'll just deal with it as it comes,'"* Weldon said. *"In several conversations I had, all I got was a shoulder shrug. ... There was no sense of urgency to try to remedy it or fix it or stop the spread."*

He said it has been up to the local staff members and managers to take precautions to mitigate the virus' spread.

*"We're from the local communities, and we don't want to bring it back to our parents and families,"* Weldon said.

He said the union suggested a two-week quarantine for the entire facility to isolate the spread. This idea was shot down.

Weldon said more testing would have allowed for staff to pinpoint cases, isolate individuals and reduce the spread. But testing outside of symptomatic individuals is not being done.

*"It costs money,"* Weldon said. *"That's the only thing I can think of. There is no other explanation other than money."*

He said each lab tests costs around $100. The prison also has a cheaper, on-site, 15-minute test, but he said it is *"extremely unreliable,"* often returning a false negative when a lab test shows a positive result.

Weldon said further plans to transfer more USMS inmates to FCI Ray Brook have been put on hold; the prison is currently under a transfer moratorium because of its COVID-19 spike.

This moratorium ends Jan. 27. Weldon said executive staff will reevaluate then to see if the facility will take in more inmates. He doubted that the BOP would test new groups of inmates from the USMS, as they have not in the past.

## NEWSLETTER

Today's breaking news and more in your inbox

**I'm interested in (please check all that apply)**

☐ Daily Newsletter    ☐ Breaking News

EMAIL ADDRESS

SUBSCRIBE

EXHiBiT C.

TRULINCS 08876084 - COLEMAN, JERMEL ANTHONY - Unit: RBK-G-A

--------------------------------------------------------------------------------

FROM: Warden
TO: 08876084
SUBJECT: RE:***Inmate to Staff Message***
DATE: 01/28/2021 07:27:02 AM

I have forwarded this request to your Unit Team for review.

>>> ~^!"COLEMAN, ~^!JERMEL ANTHONY" <08876084@inmatemessage.com> 1/28/2021 7:06 AM >>>
To: warden lovett
Inmate Work Assignment: orderly

on dec 28th i sent you a letter asking for compassionate release. i have'nt heard anything back from you. i just want to confirm that it made it to your office.

*Exhibit D*

```
  RBKFE  606.00 *      MALE CUSTODY CLASSIFICATION FORM      *   03-17-2021
PAGE 001 OF 001                                                   10:27:35
                          (A) IDENTIFYING DATA
REG NO..: 08876-084               FORM DATE: 02-27-2021        ORG: RBK
NAME....: COLEMAN, JERMEL ANTHONY
                                        MGTV: NONE
PUB SFTY: NONE                          MVED:
                          (B) BASE SCORING
DETAINER: (0) NONE                SEVERITY.......: (3) MODERATE
MOS REL.: 40                      CRIM HIST SCORE: (10) 17 POINTS
ESCAPES.: (1) > 10 YRS MINOR      VIOLENCE.......: (0) NONE
VOL SURR: (0) N/A                 AGE CATEGORY...: (2) 36 THROUGH 54
EDUC LEV: (0) VERFD HS DEGREE/GED DRUG/ALC ABUSE.: (1) <5 YEARS
                          (C) CUSTODY SCORING
TIME SERVED.....: (4) 26-75%      PROG PARTICIPAT: (1) AVERAGE
LIVING SKILLS...: (1) AVERAGE     TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE        FAMILY/COMMUN..: (4) GOOD


                  --- LEVEL AND CUSTODY SUMMARY ---

BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
+17  +18    -1        +16      MEDIUM     N/A              IN      DECREASE


G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

DATE REVIEWED:    03-17-2021

INSTITUTION:    FCI Ray Brook          UNIT:        GEN

INMATE NAME:    Coleman, Jermel        REG NO:      08876-084

FIRST STEP ACT (Circle One):        (ELIGIBLE)        INELIGIBLE

RECIDIVISM RISK LEVEL (Circle One):        MINIMUM    LOW  (MEDIUM)    HIGH

Case Manger J. Weldon

EXHIBIT 7



**Individualized Needs Plan - Program Review** (Inmate Copy)
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: COLEMAN, JERMEL ANTHONY 08876-084

| | | |
|---|---|---|
| Facility: | RBK RAY BROOK FCI | Proj. Rel. Date: 07-17-2024 |
| Name: | COLEMAN, JERMEL ANTHONY | Proj. Rel. Mthd: GCT REL |
| Register No.: | 08876-084 | DNA Status: PET00690 / 03-15-2007 |
| Age: | 44 | |
| Date of Birth: | 04-25-1976 | |

**Detainers**

| Detaining Agency | Remarks |
|---|---|

*NO DETAINER*

**Current Work Assignments**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| RBK | ORD GEN A | ORDERLY | 07-21-2020 |

**Current Education Information**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| RBK | ESL HAS | ENGLISH PROFICIENT | 09-02-2003 |
| RBK | GED EARNED | GED EARNED IN BOP | 03-24-2004 |

**Education Courses**

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| RBK | | MAN-UP- GROWTH & PERS. CHANGE | 01-09-2020 | CURRENT |
| RBK | C | FICTIONAL WRITING | 01-08-2020 | 03-19-2020 |
| RBK | C | PHYSIOLOGY AND FITNESS | 01-22-2020 | 02-15-2020 |
| RBK | C | WEIGHT MANAGEMENT | 01-18-2020 | 02-04-2020 |

**Discipline History (Last 6 months)**

| Hearing Date | Prohibited Acts |
|---|---|

*** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ***

**Current Care Assignments**

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 10-03-2019 |
| CARE1-MH | CARE1-MENTAL HEALTH | 10-07-2019 |

**Current Medical Duty Status Assignments**

| Assignment | Description | Start |
|---|---|---|
| C19-T NEG | COVID-19 TEST-RESULTS NEGATIVE | 07-13-2020 |
| NO PAPER | NO PAPER MEDICAL RECORD | 10-03-2019 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 10-03-2019 |
| YES F/S | CLEARED FOR FOOD SERVICE | 10-23-2019 |

**Current Drug Assignments**

| Assignment | Description | Start |
|---|---|---|
| DAP QUAL | RESIDENT DRUG TRMT QUALIFIED | 08-31-2020 |
| ED WAIT RJ | DRUG EDUCATION WAIT-RQ JUDREC | 10-25-2019 |
| ELIGIBLE | 18 USC 3621 RELEASE ELIGIBLE | 09-09-2020 |
| NR PART | NRES DRUG COUNSEL PARTICIPANT | 03-10-2020 |

**FRP Details**

Most Recent Payment Plan

| FRP Assignment: | **PART** | **FINANC RESP-PARTICIPATES** | **Start: 01-10-2020** |
|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| Inmate Decision: | **AGREED** | **$25.00** | Frequency: **QUARTERLY** | |
| Payments past 6 months: | **$50.00** | | Obligation Balance: **$125.00** | |

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $125.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

*** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ***



**Individualized Needs Plan - Program Review** **(Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: COLEMAN, JERMEL ANTHONY 08876-084

SEQUENCE: 01121169
Team Date: 10-02-2020

| Most Recent Payment Plan | | | | | | | |
|---|---|---|---|---|---|---|---|
| No. | Type | Amount | | Balance | Payable | Status | |
| 3 | ASSMT | $200.00 | | $125.00 | IMMEDIATE | AGREED | |
| | | Adjustments: | Date Added | Facl | Adjust Type | Reason | Amount |
| | | | 09-09-2020 | RBK | PAYMENT | INSIDE PMT | $25.00 |
| | | | 06-09-2020 | RBK | PAYMENT | INSIDE PMT | $25.00 |
| 2 | FINE | $1,000.00 | | $0.00 | IMMEDIATE | COMPLETEDZ | |

*\*\* NO ADJUSTMENTS MADE IN LAST 6 MONTHS \*\**

**Payment Details**

Trust Fund Deposits - Past 6 months: $ N/A     Payments commensurate ? N/A

New Payment Plan:    \*\* No data \*\*

## Progress since last review

-Work Assignment of Orderly. -Paying FRP. -Enrolled in education Classes. -No discipline. -Saving Money.

## Next Program Review Goals

-Obtain Birth Certificate and SS card. -Continue saving money for release, $10.00 per month. -Continue with education courses as scheduled. -Clear discipline history.

## Long Term Goals

-Obtain Birth Certificate and SS card prior to release. -Continue saving in pre-release savings account and save at the rate of $10.00 per month for a total of $500.00 by release. -Complete education class as scheduled.

## RRC/HC Placement

## Comments

Finance/Poverty Need Screen
Is there documentation in the PSR of any of the following?
__     Any history of Bankruptcy
_X_    No bank account
_X_    No assets nor liabilities noted in PSR
__     Debts noted in Credit Report or other sources
__     Tax Liabilities/back taxes
__     Unpaid alimony/child support
__     other indications of lack of financial management skills (specify)
         _____

YES __x____     NO _____ (if any of the above, check yes)
If the answer is yes, the inmate has a financial/poverty skills need.

# Certificate of Completion

This Certificate hereby acknowledges

## J. Coleman

For successfully completing the

Self-Study Ancient Roman History Course,

Demonstrating an ongoing commitment to personal

Growth and development through continuing education.

Awarded on this 1st day of February, 2021

J. Rockhill, A.C.E. Coordinator

# Certificate of Completion

Awarded to

## Jermel Coleman

For successfully completing the

Non-Residential Drug Abuse Program

at FCI Ray Brook on October 30, 2020

D. Godfrey

# FCI Ray Brook Recreation Department

*Presents this certificate of completion to:*

## Jermel Coleman

For the Successful completion of the following Recreation Fitness and Wellness class: Jump Rope

**Presented  *March*  2020**

B. Ojida – Sports Specialist

# Certificate of Completion

This Certificate hereby acknowledges

## J. Coleman

For successfully completing the

Memoir Writing Course,

Demonstrating an ongoing commitment to personal

Growth and development through continuing education.

Awarded on this 2nd day of November, 2020

J. Rockhill, A.C.E. Coordinator

Jermel Coleman # 88826-084

F.C.I. Ray Brook

Ray Brook, N.y. 12977

P.O. Box 900

FCI RAY BROOK
P.O. BOX 300, RAY BROOK, NEW YORK

DATE 31/8/21

"The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another address, please return the enclosed to the above address."

To: Honorable Judge Norman K. Moon
United States District Court
for the Western District of Virginia
255 West Main Street
Charlottesville, Virginia 22902